## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LASHAUMBA O. RANDOLPH; | ) | 2:18-CR-257 |
| ARMOND L. LONG | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION

**J. Nicholas Ranjan, United States District Judge**

Defendants Lashaumba O. Randolph and Armond L. Long were charged in a superseding indictment on February 4, 2020 with perpetrating a scheme to defraud the State Farm and Progressive insurance companies by submitting fraudulent loss claims on certain automobiles in late 2017 and early 2018. ECF 99. This tale, explained below, is a topsy-turvy one, featuring a diverse cast of characters that includes fraternal fraudsters, drug addicts, prostitutes, and a mysterious man known only as "Black." But at its core, the superseding indictment alleges that Defendants, either personally or by soliciting others, procured stolen vehicles, submitted false claims of loss on those vehicles by staging accidents for each of the vehicles, arranged for the vehicles to be towed to specific automobile repair garages, and in some cases burned the vehicles and submitted claims for loss.

Pursuant to the agreement of the parties, this Court held a non-jury trial on September 19, 2022, and September 20, 2022. ECF 259; ECF 260. The parties then submitted post-trial briefing, and made closing arguments before the Court on January 18, 2023. ECF 274. Having reviewed the entire record, including the parties' briefs, exhibits, and transcripts of proceedings, the Court has reached its decision. The Court finds Lashaumba Randolph **GUILTY** beyond a reasonable doubt as to

Counts 1 and 4-6 and **NOT GUILTY** as to Counts 2 and 3, and finds Armond Long **NOT GUILTY** on all Counts.

## FINDINGS OF FACT[1]

At the request of the parties (ECF 250; ECF 251), and pursuant to Federal Rule of Criminal Procedure 23(c), the Court makes the following specific findings of fact.

**A.    Counts 1-3, and Count 5**

As to Counts 1-3 against both Defendants, alleging a scheme to defraud by use of interstate wires (Count 1) and by use of the United States mail (Counts 2 and 3) in violation of 18 U.S.C. § 1343, and Count 5 against both Defendants, alleging use of fire to commit the wire fraud charged at Count 1 of the superseding indictment, in violation of 18 U.S.C. § 844(h)(1), the Court finds as follows:

Acura MDX

1.      A 2010 Acura MDX with VIN ending -6841 was reported stolen by law enforcement in Broward County, Florida on July 24, 2012.  ECF 266, 19:22-20:25.  Its VIN was altered to end in -6847, and a fictitious title history was created for that VIN using stolen title records from the state of Georgia.  *Id.* at 20:1-22:4, 43:11-46:17; Gov't Exs. 14, 35.

2.      State Farm began providing insurance coverage on the Acura MDX in the name of Lashaumba Randolph and Randolph Holdings, Inc. around November 2012.  ECF 267, 106:16-107:3.  Pursuant to its standard practices, State Farm would not have insured the Acura MDX if it knew it was stolen or if a material misrepresentation about coverage had been made.  *Id.* at 107:10-22.

---

[1] Given the many individuals in this case (some of whom have the same last names) and for the avoidance of any confusion, the Court will refer to individuals (and vehicles) in this opinion using their complete names.

3.      A person who identified himself as "Isiakah Anatolla" called Progressive Insurance, which did not insure the Acura MDX, to report that he had been involved in an accident while driving the Acura MDX with two other vehicles on December 7, 2017.   ECF 264-4; ECF 267, 103:3-104:24.   When Progressive returned Isiakah Anatolla's call, he reported that the other two vehicles in the collision were a Cadillac Escalade and a Nissan Maxima.  ECF 264-4.  After comparing the voice of Lashaumba Randolph in Government Exhibit 12 (transcript at ECF 264-10) with the voice of Isiakah Anatolla in Government Exhibit 4 (transcript at ECF 264-4), including the tone of each speaker's voice and the cadence, rhythm, and verbal ticks of their speech,[2] it becomes clear that, on or about December 16, 2017, Lashaumba Randolph, posing as Isiakah Anatolla, contacted the Progressive Insurance Company regarding the purported vehicle accident of December 7, 2017.

4.      On December 16, 2017, State Farm received a claim for loss on the Acura MDX from Randolph Holdings, for an accident that purportedly occurred on December 7, 2017.  ECF 267, 107:23-109:2; Joint Ex. 25.

5.      The Acura MDX appeared on the lot of Darrin's Auto Body vehicle repair in Monongahela, Pennsylvania, in December 2017.  ECF 266, 89:6-14, 93:22-95:11. Because Darrin Leech, the owner of Darrin's Auto Body, had no information about the owner of the vehicle or why the vehicle was on his lot, he did not work on the Acura MDX, and it remained on the lot untouched.  *Id.*  Darrin Leech estimated that the cost to the owner of the Acura MDX for repairs would be about $16,000.  *Id.* at 96:12-25.

---

[2] The Court finds that Isiakah Anatolla used the phrases "whatnot" and "or whatever" 16 times in his ten-minute call with Progressive, and Lashaumba Randolph used those same phrases over 100 times in an approximately 40-minute conversation with State Farm.  Gov't Exs. 4, 12; ECF 264-4; ECF 264-10.  These verbal tics, in part, were one part of the evidence that the Court considered in finding that Lashaumba Randolph was likely posing as Isiakah Anatolla.

6.      State Farm sent an insurance inspector to Darrin's Auto Body on December 19, 2017 to review the damage to the vehicle.  ECF 267, 109:4-11.  Based on that assessment, State Farm issued a check for $7,487.07 to Lashaumba Randolph and Randolph Holdings, Inc.  *Id.* at 109:19-110:4; Joint Ex. 26.

7.      Darrin Leech learned who the listed owner of the Acura MDX was from the insurance inspector's estimate.  ECF 266, 95:8-96:3.  Then he tried to contact the owner of the Acura MDX multiple times to receive permission to begin repair work, but never made contact and never received a call back.  *Id.* at 96:4-97:20.

8.      The Acura MDX was destroyed by a fire on or about January 14, 2018 while in the lot at Darrin's Auto Body.  ECF 266, 76:18-79:4; Gov't Exs. 17-20, 25-27.  The fire was intentionally set in the front passenger seat of the vehicle.  ECF 266, 119:9-126:21.

9.      On January 16, 2018, Darrin Leech telephoned State Farm and advised it of the Acura MDX fire.  ECF 266, 97:21-98:18; ECF 267, 163:3-8.  The parties stipulated at trial that State Farm received the call in the state of New York.  ECF 267, 163:3-8.  About an hour later, an individual purporting to be the owner of the Acura MDX called Darrin Leech to instruct him to begin repair work.  ECF 266, 98:19-99:16.

10.     On January 16, 2018, State Farm construed the call from Darrin Leech as a claim for loss on the Acura MDX relating to the fire that took place on January 14, 2018.  ECF 267, 110:10-111:14; Joint Ex. 27.

11.     On February 1, 2018, State Farm paid $2,422.95 to Lashaumba Randolph and Randolph Holdings as payment for the fire claim.  ECF 267, 111:20-112:12; Joint Ex. 29.

12.     On February 27, 2018, State Farm interviewed Lashaumba Randolph concerning a claim of loss involving the Chevrolet Camaro at issue in Count 4, and

which State Farm also covered.  ECF 264-10, p. 1.  When asked if he set fire to the Acura MDX, Lashaumba Randolph denied any involvement.  ECF 264-10, p. 21.

<u>Cadillac Escalade</u>

13.     A 2016 Cadillac Escalade with VIN ending -7310 was reported stolen on February 28, 2017 in the National Crime Information Center database.  ECF 266, 13:4-15:4.  Its VIN was altered to end in -0310, and a fictitious title history was created for that VIN using stolen title records from the state of Georgia.  ECF 266, 14:10-16:25; Gov't Ex. 32.  According to the fictitious title history for the VIN ending –0310, the Cadillac Escalade was titled in Georgia to David Jackson, and then in Ohio to Ezell Napier.  ECF 266, 16:16-18:3; Gov't Ex. 34.

14.     Kelvin Long, the brother of Defendant Armond Long, connected Dionne Amison to Armond Long in order to purchase the Cadillac Escalade.  ECF 267, 138:15-139:7.  The Cadillac Escalade had minor cosmetic damage and the airbags had been deployed.  *Id.* at 139:8-13; Joint Ex. 9.

15.     Kelvin Long testified that he drove the Cadillac Escalade from Atlanta, Georgia back to Columbus, Ohio so that Dionne Amison could transfer the Cadillac Escalade's title in her name.  ECF 267, 137:13-140:11.  According to Kelvin Long, after Dionne Amison put the Cadillac Escalade's title in her name, she kept the vehicle, while he returned to Atlanta in a yellow Chevrolet Camaro with a man named "Black" and the title to the Cadillac Escalade, and gave the title to Armond Long.  *Id.* at 136:6-137:12, 141:1-16.  But for the reasons stated below, the Court does not find this testimony credible, and so does not consider it in reaching its conclusions.

16.     Progressive Insurance began covering the Cadillac Escalade in the name of Dionne Amison on September 1, 2017.  ECF 267, 85:21-87:5.  Dionne Amison listed AAA Auto Sales as the lienholder of the Cadillac Escalade when she applied for the insurance policy.  ECF 264-3; ECF 267, 92:3-19.  Kelvin Long testified that AAA Auto

Sales is purportedly a company owned by Armond Long in the business of buying and selling cars. ECF 267, 130:3-131:11. There is no other evidence in the record to support that assertion, such as any corporate records associated with AAA Auto Sales.

17.    On December 8, 2017, Dionne Amison filed a claim with Progressive concerning the Cadillac Escalade for a loss that purportedly occurred on December 7, 2017. ECF 264-1 (Gov't Ex. 2); ECF 267, 86:25-87:25.

18.    To report the claim, Dionne Amison called Progressive and told a claims representative that William Blair had driven the Cadillac Escalade and was involved in a three-vehicle collision in Pennsylvania in which the airbags had deployed. ECF 264-1 (Gov't Ex. 2).

19.    The Cadillac Escalade appeared on the lot of Darrin's Auto Body vehicle repair in December 2017. ECF 267, 90:8-19. Because Darrin Leech, the owner of Darrin's Auto Body, had no information about the owners of the vehicle or why the vehicle was on his lot, he did no work on the Cadillac Escalade, and it remained on the lot untouched. ECF 266, 93:22-95:11. Darrin Leech estimated the cost to repair the vehicle would be around $20,000. *Id.* at 96:12-22.

20.    Progressive sent an insurance inspector to Darrin's Auto Body to review the damage to the vehicle. ECF 267, 91:3-92:24. Based on that assessment, Progressive issued a check in the amount of $22,871.45 to Dionne Amison and AAA Auto Sales, as lienholder. *Id.*; Joint Ex. 11. The check was endorsed by Dionne Amison, and by someone who wrote, "AAA Auto Sales." Joint Ex. 11.

21.    Kelvin Long testified that Armond Long gave him about $1,200 to give to Dionne Amison as part of the claim for loss on the Cadillac Escalade. ECF 267, 143:18-145:22. Kelvin Long also testified that he sent Dionne Amison $800 and kept the rest. *Id.* But for the reasons stated below, the Court does not find this testimony credible, and so did not consider it in reaching its conclusions.

22.     Darrin Leech learned who the listed owner of the Cadillac Escalade was from the insurance inspector's estimate.  ECF 266, 95:8-96:3.  He then tried to contact the owner of the Escalade multiple times to receive permission to begin repair work, but never made contact and never received a return call.  *Id.* at 96:4-97:20.

23.     The Cadillac Escalade was destroyed by a fire on or about January 14, 2018 while in the lot at Darrin's Auto Body.  ECF 266, 76:18-79:4; Joint Exs. 21-24. The fire that destroyed the Cadillac Escalade was separate from the fire that had destroyed the Acura MDX, because the Cadillac Escalade was parked too far away to be impacted by the Acura MDX fire.  ECF 266, 79:9-23.  The fire was intentionally set in the front passenger seat of the vehicle through the ignition of gasoline.  ECF 266, 80:20-25, 131:11-140:7; Gov't Exs. 28-30.

24.     Dionne Amison called Progressive to file a claim for loss on the Cadillac Escalade as a result of the fire.  ECF 264-2.

25.     Kelvin Long testified that, while in a different room, he overheard a conversation that included Armond Long, Thomas Long, and Stephon Lawrence, in which someone mocked Stephon Lawrence for being scared about "jumping over the fence and doing whatever he was supposed to do" to the Cadillac Escalade; Armond Long purportedly laughed at that statement.  ECF 267, 146:1-150:10.

26.     Kelvin Long has a criminal history, including a 2004 guilty plea for access device fraud, and a 2019 guilty plea for tampering with automobile titles.  ECF 267, 151:7-154:3.  As part of his guilty plea as to the latter charge, Kelvin Long agreed to testify before a federal grand jury against his brothers Armond and Thomas Long about activities at issue in this case in exchange for immunity.  *Id.* at 153:6-156:8. Additionally, Arthur Long, the father of Armond Long and Kelvin Long, testified that Kelvin Long has a reputation in the community for being a liar.  ECF 267, 168:7-170:6.  Considering this context, as well as the Court's own observations of Kelvin Long at trial, the Court finds that Kelvin Long is generally not a credible witness.

Nissan Maxima

27.     Derek Price bought a Nissan Maxima with VIN ending -7308 from Thomas Long, the brother of Armond Long, for $4,000 and registered it in the name of DP Entertainment, Derek Price's business.  ECF 266, 143:22-145:7; ECF 267, 85:21-86:3, 89:24-90:4.  Though he purchased the vehicle from Thomas Long, Derek Price actually paid Armond Long.  ECF 266, 143:22-145:7.

28.     Derek Price purchased the vehicle in order to "make a profit on it" by involving it in an accident and filing an insurance claim.  ECF 266, 145:8-147:1.

29.     At the direction of either Thomas Long or Armond Long, Derek Price solicited Brianne Cornetta to add the Nissan Maxima to her already existing Progressive insurance policy in exchange for money.  ECF 266, 147:5-16; ECF 267, 12:23-13:23.  At that time, Brianne Cornetta never saw or drove the vehicle, but Derek Price coached her on what to tell Progressive to obtain coverage for the vehicle. *Id.* at 13:24-14:10.

30.     On December 7, 2017, Haley Johnson called Progressive to report a claim for loss on the Nissan Maxima; she reported she was driving the Nissan Maxima and had rear-ended a Cadillac Escalade, which then hit an Acura MDX, and that her passenger was Holly Smith, who had become friends with Haley Johnson through their crack addictions and prostitution.  ECF 264-6 (Gov't Ex. 7); ECF 267, 30:10-21, 93:3-9.

31.     Haley Johnson advised Holly Smith that Progressive would be calling her for information about a car accident.  ECF 267, 27:14-25.  Holly Smith falsely represented to Progressive that she was a passenger during the crash, that the crash took place in Ohio, that her car had been rear-ended, and that she did not know the make or model of the vehicle she was in.  ECF 264-8 (Gov't Ex. 9); ECF 267, 29:1-30:5.

32.     In December 2017, Derek Price instructed Brianne Cornetta to file a claim for loss on the Nissan Maxima for an accident that had purportedly occurred on Route 51.  ECF 266, 150:5-22; ECF 267, 15:9-16:1.  Brianne Cornetta represented to Progressive that she had been paying installments on the car to Derek Price and that she had possession over the car.  ECF 264-5, pp. 2-4.  She also represented that her friend Haley Johnson had borrowed the Nissan Maxima and gotten in an accident.  ECF 264-5 (Gov't Ex. 5), pp. 8-12; ECF 267, 17:7-18:14.  Brianne Cornetta did not know a person named Haley Johnson and did not know if the accident had actually occurred.  *Id.*

33.     At Derek Price's instruction, Brianne Cornetta told Progressive that any follow-up questions should be directed to Haley Johnson.  ECF 267, 19:9-15.

34.     According to the Jefferson Hills Police Department, there is no record of a three-vehicle crash that occurred on Route 51.  ECF 266, 25:20-26:14.

35.     Brianne Cornetta understood that her payment from Derek Price for insuring the Nissan Maxima would come from this claim for loss.  ECF 267, 16:11-22.

36.     On February 27, 2018, Progressive sent a letter in the United States mail to Brianne Cornetta requesting more information about the purported accident.  ECF 267, 19:16-20:11; Joint Ex. 2.

37.     On March 15, 2018, Progressive sent a letter via United States mail to Derek Price as the owner of the vehicle to advise that the claim for damages from the accident was denied for failure to provide specific information, but that Progressive could reconsider the denial if Derek Price provided the information.  ECF 267, 93:10-94:16; Joint Ex. 3.

38.     Derek Price admitted that he was previously involved in two false insurance claims while on bond pending sentencing for an undisclosed 2017 federal charge.  ECF 266, 155:12-157:13.  He also made a number of false or misleading

statements in his testimony, such that the Court finds Derek Price is generally not a credible witness.[3]

**B.    Counts 4 and 6**

As to Count 4 against Defendant Lashaumba Randolph only, alleging a scheme to defraud by use of interstate wires in violation of 18 U.S.C. § 1343, and Count 6 as to Defendant Lashaumba Randolph only, alleging use of fire to commit the wire fraud charged at Count 4 the superseding indictment, in violation of 18 U.S.C. § 844(h)(1), the Court finds as follows:

39.    A Chevrolet Camaro with VIN ending -4522 was stolen in Ft. Lauderdale, Florida on March 24, 2017.  ECF 266, 22:5-24:9.  Its VIN was altered to end in -5480 and a fictitious title history was created using stolen vehicle title records from the state of Georgia, in which the Chevrolet Camaro was titled in Georgia to Kelvin Jackson, and then in Ohio to Izell Napier.  ECF 266, 24:10-25:19; Gov't Exs. 16, 33.

40.    State Farm issued an insurance policy on the Chevrolet Camaro for the false VIN ending -5480 on September 1, 2017 to Street Institute Technology Transportation Engineering, LLC, a company of Defendant Lashaumba Randolph. ECF 264-10; ECF 267, 112:16-114:9.  State Farm would not have insured the vehicle had it known the vehicle was stolen and that its VIN had been falsified.  ECF 267, 107:4-22.

---

[3] Derek Price stated that he received no promises from the Government in exchange for his testimony, and that he did not recognize handwriting memorializing an interview with the Government.  ECF 266, 152:12-153:4, 153:16-154:3, 158:16-159:6. But the Government's witnesses testified credibly and unequivocally that Derek Price was told he would not be prosecuted in exchange for his cooperation and testimony, that Derek Price cooperated because of this agreement, and that Derek Price in fact signed the document memorializing his interview.  ECF 266, 161:5-162:15; Joint Ex. 3, p. 3.  Derek Price is serving a term of supervised release following an arrest in October 2016 and a sentence imposed on February 16, 2019.  ECF 266, 155:12-156:12.

41.     In late 2017, Thomas Long solicited Denise Linnen, a drug addict and longtime friend of the Long family, to travel from Pennsylvania to Atlanta, Georgia to title a Chevrolet Tahoe in her name in exchange for $250.  ECF 267, 39:9-20, 42:5-45:9.  She then traveled with them for that purpose and titled the Chevrolet Tahoe. *Id.*  Denise Linnen specifically testified that Thomas Long said to her "my brother wants to know if you can come down with us and put a car in your name, [and] get $250."  *Id.* at 44:13-19.

42.     Denise Linnen traveled to Atlanta with several other individuals, including two women named Holly and Wanda[4] and a man named Jamie Payne, who was a "john," or client, of Haley Johnson's and Holly Smith's prostitution.  ECF 267, 26:14-20, 43:1-44:4.  After she titled the Chevrolet Tahoe in her name, Denise Linnen traveled back to Pennsylvania with a group of individuals that included Armond Long, a man named "Black," and Lashaumba Randolph.  ECF 267, 46:14-49:11.  To make the trip, "Black" drove a yellow Chevrolet Camaro.  ECF 267, 47:14-48:15.

43.     On December 7, 2017, Pennsylvania State Trooper James Stevenson responded to a vehicle crash on Linden Avenue, where he saw an abandoned yellow Chevrolet Camaro that was damaged and had airbags deployed.  ECF 266, 52:10-55:15; 59:17-18.  Lashaumba Randolph appeared on scene and identified himself as the owner of the Chevrolet Camaro, but was evasive in answering Trooper Stevenson's questions.  ECF 266, 56:12-57:20.

44.     The Chevrolet Camaro was towed to Nickolich Towing and Salvage in Clairton, Pennsylvania.  ECF 266, 55:16-56:15; 62:24-63:9.  Lashaumba Randolph appeared at Nickolich's to claim the vehicle on December 27, 2017, and had it

---

[4] Denise Linnen stated that she recognized a woman in the courthouse during trial as either Holly or Wanda.  ECF 267, 43:14-44:4.  Holly Smith was in the courthouse and testified at trial.

transferred to Johnny's Auto in Clairton, Pennsylvania.  ECF 266, 65:1-68:1, 69:1-15; ECF 267, 66:2-68:11; Gov't Ex. 16.

45.    Lashaumba Randolph texted William Forkey, who worked at Johnny's, about the Chevrolet Camaro.  ECF 267, 68:15-25, 71:23-72:6, 75:23-76:5.

46.    The Chevrolet Camaro was intentionally destroyed by a fire in early January 2018 at Johnny's.  ECF 267, 72:20-74:4; 75:8-11; Gov't Exs. 21-24.

47.    Thomas Long went to Johnny's Auto in early 2018 to ask about a different vehicle that had been involved in an accident on December 7, 2017, the same night as the Chevrolet Camaro accident.  ECF 267, 76:6-77:17.

48.    On February 5, 2018, State Farm received notice of Lashaumba Randolph's claim for loss relating to the Chevrolet Camaro fire, with a date of loss of January 5, 2018, by Jakumi Randolph and Street Institute Technology Transportation Engineering, LLC.  ECF 267, 114:10-115:13; Joint Exs. 32, 33.  State Farm did not receive a claim for loss on the Chevrolet Camaro related to collision damage.  ECF 267, 118:7-20.

49.    On February 5, 2018, Theresa Thomas, a representative from State Farm located in Tulsa, Oklahoma, spoke on the phone with Jakumi Randolph and a representative from Johnny's Auto.  ECF 267, 116:3-118:5; Gov't Ex. 39.

50.    On February 27, 2018, State Farm interviewed Lashaumba Randolph, during which he stated that he had no knowledge as to who started the Chevrolet Camaro fire and disclaimed any involvement.  ECF 264-10, pp. 14, 21.

51.    On February 27, 2018, State Farm provided an Affidavit of Vehicle Fire to Lashaumba Randolph, and he completed and returned the Affidavit on February 28, 2018, claiming the full value of the Chevrolet Camaro.  ECF 267, 118:21-120:23; Joint Ex. 41.  In the Affidavit, Lashaumba Randolph represented that the Chevrolet Camaro's true VIN ended in -5480, that the Chevrolet Camaro had been left at

- 12 -

Johnny's Auto for vehicle repair, and that Denise Walker[5] had left the vehicle at Johnny's Auto.  Joint Ex. 41.

52.     State Farm denied the claim for reasons including failure to timely advise of the loss, failure to produce requested records, and failure to submit to examination under oath.  ECF 267, 120:13-122:8, 124:7-14; Joint Exs. 43, 47.

## CONCLUSIONS OF LAW

On these facts, the Court finds beyond a reasonable doubt that a fraud has occurred here.  The more pointed question is whether these Defendants committed the fraud alleged in the superseding indictment, and whether the government has proven every element of each count beyond a reasonable doubt.

The elements of each offense, as stated in the government's proposed findings and conclusions (ECF 270), and supplemented with instructions from the Third Circuit and other circuit courts, are as follows.

## I.     ELEMENTS OF THE OFFENSES CHARGED

### A.     Wire fraud charged at Counts 1 and 4

For the Court to find either Defendant guilty of wire fraud charged at Counts 1 (against both Defendants) and 4 (against Lashaumba Randolph only) of the superseding indictment, the government must prove these elements beyond a reasonable doubt:

1.     The defendant knowingly devised a scheme to defraud or to obtain money by materially false or fraudulent pretenses, representations, or promises, or

---

[5] Denise Linnen went by the name "Denise Walker."  ECF 267, 38:14-39:1.

the defendant willfully participated in such a scheme with knowledge of its fraudulent nature;

2.      The defendant acted with the intent to defraud; and

3.      In advancing, furthering or carrying out the scheme, the defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television in interstate commerce.

Third Circuit Model Criminal Jury Instruction 6.18.1343.

**B.      Mail fraud charged at Counts 2 and 3**

For the Court to find either Defendant guilty of mail fraud charged at Counts 2 and 3 of the superseding indictment, the government must prove these elements beyond a reasonable doubt:

1.      The defendant knowingly devised a scheme to defraud or to obtain money by materially false or fraudulent pretenses, representations, or promises, or the defendant willfully participated in such a scheme with knowledge of its fraudulent nature;

2.      The defendant acted with the intent to defraud; and

3.      In advancing, furthering or carrying out the scheme, the defendant used the mails or caused the mails to be used.

Third Circuit Model Criminal Jury Instruction 6.18.1341.

**C.      "Scheme to Defraud" charged at Counts 1 through 4**

In order to prove the first element of both Wire Fraud and Mail Fraud, the government must prove beyond a reasonable doubt that a defendant devised any plan, device, or course of action to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises reasonably calculated to deceive persons of average prudence, or willfully participated in that scheme.

- 14 -

Importantly, "the relevant inquiry is not whether the defendant acted knowingly in making *any* misstatement, but whether [he] did so with respect to the overarching fraudulent scheme—that is, the particular 'illicit enterprise' charged in the indictment." *United States v. Dobson*, 419 F.3d 231, 237 (3d Cir. 2005) (emphasis in original).

The government need not prove every misrepresentation charged in the superseding indictment. Third Circuit Model Criminal Jury Instruction 6.18.1341-1. Rather, it is sufficient if the government proves beyond a reasonable doubt that one or more of the alleged material misrepresentations were made in furtherance of the alleged scheme to defraud. *Id.* Deceitful statements of half-truths or the concealment of material facts or the expression of an opinion not honestly entertained may constitute false or fraudulent statements. *Id.*

**D.      Intent to defraud charged at Counts 1 through 4**

In order to prove the second element of both Wire Fraud and Mail Fraud, the government must prove beyond a reasonable doubt that the defendant participated in the scheme charged with the specific intent to defraud. *United States v. Hannigan*, 27 F.3d 890, 892 (3d Cir. 1994). "To act with an 'intent to defraud' means to act knowingly and with the intention or the purpose to deceive or to cheat." Third Circuit Model Criminal Jury Instruction Comment 6.18.1344-1. "The specific intent element may be found from a material misstatement of fact made with reckless disregard for the truth." *Hannigan*, 27 F.3d at 892 n.1.

**E.      Interstate wire communications charged at Counts 1 and 4**

For the third element of the wire fraud offenses charged in Counts 1 and 4, the phrase "transmits by means of wire, radio, or television communication in interstate commerce" means to send from one state to another by means of telephone or telegraph or by means of radio or television. Third Circuit Model Criminal Jury

Instruction 6.18.1341-1.  The phrase includes a telephone conversation by a person in one state with a person in another state.  *Id.*

### F.      "Use of Mails" charged at Counts 2 and 3

For the "use of the mails" element of the mail fraud offenses charged in Counts 2 and 3, the government must prove either that the defendant used the mails, or that the defendant knew the use of the mails would follow in the ordinary course of business or events, or that the defendant should reasonably have anticipated that the mails would be used.  Third Circuit Model Criminal Jury Instruction 6.18.1341-5.  It is not necessary that the item mailed was itself false or fraudulent or contained any false or fraudulent statement, representation, or promise, or contained any request for money or thing of value.  *Id.*

### G.      Accomplice liability as to use of fire charged at Counts 5 and 6

A person may be guilty of an offense because he or she personally committed the offense, or because he or she aided and abetted another person in committing the offense.  Third Circuit Model Criminal Jury Instructions 7.02; 18 U.S.C. § 2(a) ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.").  In order to find a defendant guilty under a theory of accomplice liability, the government must prove beyond a reasonable doubt:

1.      That another person committed a substantive offense;

2.      That the defendant knew of the commission of the substantive offense;

3.      That the defendant knowingly did some act for the purpose of aiding or furthering the substantive offense, and with the specific intent that the other person commit the substantive offense; and

4.      That the defendant performed an act in furtherance of the offense.

Third Circuit Model Criminal Jury Instructions 7.02; *United States v. Centeno*, 793 F.3d 378, 387 (3d Cir. 2015).

- 16 -

**H.     Use of fire to commit a federal felony charged at Counts 5 and 6**

It is unlawful for a person to "use[ ] fire or an explosive to commit any felony which may be prosecuted in a court of the United States."  18 U.S.C. § 844(h)(1).  So for the Court to find Defendants guilty of the crime of Use of Fire to Commit a Federal Felony in violation of 18 U.S.C. §§ 2 and 844(h)(1) charged at Counts 5 (against both Defendants) and 6 (against Lashaumba Randolph only) of the superseding indictment, the government must prove these elements beyond a reasonable doubt:

1.  That the defendant committed a felony for which he may be prosecuted in a court of the United States; and

2.  That the defendant used fire to commit that felony.

*United States v. Dougherty*, 98 F. Supp. 3d 721, 745 (E.D. Pa. 2015).  Though the Third Circuit has not interpreted this provision, other federal courts in Pennsylvania have held that Section 844(h)(1) incorporates the elements of the predicate offense.  *Id.* (citing *United States v. Martin*, 523 F.3d 281, 292 (4th Cir.2008)).

Applying the elements of accomplice liability outlined above to the offense of Use of Fire to commit the wire fraud charged at Counts 1 and 4, and as stated in the superseding indictment, the government must prove beyond a reasonable doubt:

1.      That the defendant, or some other person, used fire to commit a federal offense punishable by more than one year of imprisonment;

2.      That the defendant associated with that criminal venture and knew that fire was going to be used to commit the offense;

3.      That the defendant purposefully participated in that criminal venture; and

4.      That the defendant sought by action to make that criminal venture successful.

A person uses fire to commit fraud under § 844(h)(1) when he initiates a fire as part of a scheme to deceive an insurance company into making payments for

claimed losses. *United States v. Ruiz*, 105 F.3d 1492, 1503-04 (1st Cir. 1997); *United States v. Zendeli*, 180 F.3d 879, 885 (7th Cir. 1999); *United States v. McAuliffe*, 490 F.3d 526, 534-35 (6th Cir. 2007). A person can "use" fire within the meaning of 18 U.S.C. § 844(h)(1) to commit an offense even if that person is not the one who actually started the fire. *United States v. Ihmoud*, 454 F.3d 887, 891 (8th Cir. 2006). The government is not required to prove beyond a reasonable doubt the specific identity of the person who started the fire that was used to commit the federal felony. *See United States v. Olivas-Penas*, 463 Fed. App'x. 326, 332 (5th Cir. 2012).

## II.    ANALYSIS

### A.    Lashaumba Randolph

Lashaumba Randolph is charged at all counts of the superseding indictment. Specifically, the government alleges he: (1) devised a scheme to defraud State Farm by false pretenses and representations related to the Acura MDX (Count 1) and the Chevrolet Camaro (Count 4); (2) devised a scheme to defraud Progressive by false pretenses and representations related to the Nissan Maxima (Counts 2 and 3); (3) used fire, or induced another to use fire, to destroy the Acura MDX and Cadillac Escalade in order to facilitate the wire fraud charged at Count 1 (Count 5); and (4) used fire, or induced another to use fire, to destroy the Chevrolet Camaro in order to facilitate the wire fraud charged at Count 4 (Count 6). Considering all the evidence introduced at trial, the Court finds Lashaumba Randolph guilty beyond a reasonable doubt as to Counts 1, 4, 5, and 6, and not guilty as to Counts 2 and 3.

#### 1.    Counts 1 and 5

The Court finds that Lashaumba Randolph devised a scheme to defraud State Farm. He insured the Acura MDX with State Farm in his name and his company's name and reported via telephone that the Acura MDX was involved in an accident, a claim for which he received payment. Findings of Fact, ¶¶ 2-4, 6. Based on the evidence, the Court concludes that the accident did not actually occur, and that

Lashaumba Randolph falsely reported the accident. *Id.* Even though Lashaumba Randolph reported the vehicle had been damaged, he let the Acura MDX sit on the lot at Darrin's Auto Body for weeks and showed no interest in getting it repaired. *Id.*, ¶¶ 5, 7. Then, the Acura MDX was destroyed via fire. *Id.*, ¶ 8. It was only at that point—almost immediately thereafter—that the owner of the Acura MDX suddenly contacted Darrin's to permit repairs to begin. *Id.*, ¶ 9. State Farm accordingly issued a check to Lashaumba Randolph for the fire damage to the Acura MDX. *Id.*, ¶¶ 10-11. This evidence establishes the first element of Count 1, that Lashaumba Randolph devised a plan, device, or course of action to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises reasonably calculated to deceive persons of average prudence.

The government established Lashaumba Randolph's specific intent to defraud State Farm by showing that he let the Acura MDX sit at Darrin's Auto Body for weeks without authorizing its repair, even though the damage was extensive. *Id.*, ¶¶ 5-7. That the owner of the Acura MDX waited to authorize repairs on the vehicle (at which point State Farm issued a check to Lashaumba Randolph to cover the fire damage) until just after the fire further establishes that Lashaumba Randolph specifically intended to defraud State Farm. Specifically, this evidence shows that Lashaumba Randolph never intended to make the vehicle drivable—rather, he used it as a tool by which to defraud State Farm.

The government established the third element with evidence that Darrin Leech contacted a State Farm office in New York via telephone to report the Acura MDX fire, because Darrin Leech had no way to contact the owner of the vehicle. *Id.*, ¶ 9. As such, the government established beyond a reasonable doubt all three elements of Count 1 as to Lashaumba Randolph.

Likewise, as to Count 5, this evidence establishes beyond a reasonable doubt that fire was used to destroy the Acura MDX, in order to have State Farm issue a

check to cover the fire damage.  The government did not have to prove who specifically set the fire—it proved beyond a reasonable doubt that the fire was set intentionally. *Id.*, ¶ 8.  This fact, taken with the evidence establishing Lashaumba Randolph's scheme to defraud State Farm, and the actions he took in furtherance of it, establishes his guilt beyond a reasonable doubt as to Count 5.[6]

### 2.    Counts 4 and 6

The Court also finds that Lashaumba Randolph devised a scheme to defraud State Farm involving the Chevrolet Camaro, which was insured in the name of his business.  Findings of Fact, ¶ 39.  On the night of the Chevrolet Camaro's purported crash, Lashaumba Randolph was on-scene, claimed to be the owner of the vehicle, and was evasive in answering the responding officer's questions about the accident. *Id.*, ¶ 43.  After the Chevrolet Camaro was towed to Nickolich Towing and Salvage, Lashaumba Randolph appeared there, claimed ownership of the vehicle, and directed that it be transferred to Johnny's Auto. *Id.*, ¶¶ 44-45.  A few weeks later, the Chevrolet Camaro was destroyed by fire at Johnny's Auto. *Id.*, ¶ 46.  State Farm then received a claim for loss as to the fire damage from Lashaumba Randolph's business,

---

[6] There is one caveat regarding Count 5.  Count 5 charges Lashaumba Randolph with causing a fire to destroy the Acura MDX and the Cadillac Escalade.  The Court's conclusion here is limited to the Acura MDX only, not the Cadillac Escalade.  This is because the Court sees no connection between Lashaumba Randolph and the Cadillac Escalade, let alone his involvement in a scheme to defraud any insurance company with respect to that vehicle.  Because there is no predicate scheme to defraud regarding the Cadillac Escalade, the Court cannot find that Lashaumba Randolph used a fire to further any scheme pertaining to the Cadillac Escalade.  Lashaumba Randolph is nonetheless guilty of Count 5, given that it charges use of fire as to both the Acura MDX and the Cadillac Escalade, and "and" means "or" in the context of an indictment. *United States v. Malinowski*, 347 F. Supp. 347, 352 (E.D. Pa. 1972), aff'd, 472 F.2d 850 (3d Cir. 1973) ("The general rule is that where a statute provides that an offense may be committed in several ways in the alternative, an indictment should use the conjunctive term 'and' to enumerate the means rather than the disjunctive term 'or.'  Guilt under such indictment may then be established by proof of any one of the means.  The rationale for this rule is that an indictment in the disjunctive does not provide sufficient certainty." (cleaned up)).

but received nothing as to the purported collision damage. *Id.*, ¶ 48. The logical chain, supported by the evidence, shows beyond a reasonable doubt that Lashaumba Randolph devised a scheme to defraud State Farm by staging the Chevrolet Camaro crash, arranging for it to be brought to Johnny's Auto, and destroying or directing it to be destroyed with fire in order to make an insurance claim on it. These actions also establish beyond a reasonable doubt Lashaumba Randolph's specific intent to defraud State Farm. The government established the third element with evidence that State Farm communicated with an employee at Johnny's Auto via telephone in order to gain information about the Chevrolet Camaro fire. *Id.*, ¶ 49. Thus, all elements of Count 4 are met beyond a reasonable doubt.

Again, this evidence also establishes beyond a reasonable doubt that fire was used to destroy the Chevrolet Camaro, in order to have State Farm issue a check to cover the fire damage (*i.e.*, Count 6). The government did not have to prove who specifically set the fire—it was enough that it proved beyond a reasonable doubt that the fire was set intentionally. *Id.*, ¶ 46. This fact, taken with the evidence establishing Lashaumba Randolph's scheme to defraud State Farm, and the actions he took to further it, establishes his guilt beyond a reasonable doubt as to Count 6.

### 3. Counts 2 and 3

The Court finds that Lashaumba Randolph is not guilty as to Counts 2 and 3. Specifically, the Court finds that the government failed to prove beyond a reasonable doubt that Lashaumba Randolph either devised the scheme to defraud Progressive as to the Nissan Maxima, or that he took part in that scheme to defraud in some fashion. The government's evidence does not link Lashaumba Randolph in any way to the Nissan Maxima or to any of the key players involved in that scheme—Derek Price, Haley Johnson, Holly Smith, and Brianne Cornetta. For the same reason, the Court also finds the government's evidence is deficient as to the second element of

Counts 2 and 3, and finds that it has failed to prove beyond a reasonable doubt that Lashaumba Randolph acted with the specific intent to defraud Progressive.

**B.    Armond Long**

Armond Long is charged at Counts 1-3, and 5 of the superseding indictment. Specifically, the government alleges that he: (1) devised a scheme to defraud State Farm by false pretenses and representations related to the Acura MDX (Count 1); (2) devised a scheme to defraud Progressive by false pretenses and representations related to the Nissan Maxima (Counts 2 and 3); and (3) used fire, or induced another to use fire, to destroy the Acura MDX and Cadillac Escalade in order to facilitate the wire fraud charged at Count 1 (Count 5). But considering all the evidence introduced at trial, the Court finds Armond Long not guilty at all Counts.

For the Court to find Armond Long guilty on these charges, the government had to prove beyond a reasonable doubt that he devised or participated in a scheme to defraud the insurance companies and had the specific intent to defraud them. But the chain of evidence connecting Mr. Long to that scheme to defraud and his specific intent to do so is muddy, to say the least.

The Court has no doubt that Armond Long likely engaged in some suspect business dealings, and the government has presented evidence suggesting his business involves acquiring stolen vehicles, constructing phony titles, and selling them to other parties. Findings of Fact, ¶¶ 1, 13-15, 27, 39, 41-42. But the Court sees only scant evidence that Mr. Long participated in or had any knowledge of the specific scheme to defraud the insurance companies.

The main deficiency with the government's case against Armond Long is the government's substantial reliance on the testimony of two witnesses whom the Court does not find credible: Kelvin Long and Derek Price. First, the evidence that AAA Auto Sales received payment from Progressive to cover the loss on the Cadillac Escalade falls short because the only evidence linking AAA Auto Sales to Armond

Long is Kelvin Long's statement.  Findings of Fact, ¶¶ 16, 20.  The allegation that Armond Long was given the title to the Cadillac Escalade and directed Kelvin Long to pay Dionne Amison is unpersuasive for the same reason—the only evidence supporting this claim is Kelvin Long's uncredible testimony.  *Id.*, ¶¶ 15, 21.  Lastly, Kelvin Long's testimony that Armond Long "laughed" at an alleged statement—or rather, jest—tying Stephon Black to the Cadillac Escalade fire is simply insufficient evidence to show Mr. Long devised or participated in the scheme to defraud.  *Id.*, ¶ 25.  Even crediting Kelvin Long's story, he wasn't even in the same room when he overheard this alleged laugh and wasn't part of the conversation.  *Id.*

Nor does Derek Price's testimony meet the government's burden of proof.  As with Kelvin Long, the Court does not find Derek Price's testimony credible, and so discounts his statement that he paid Armond Long for the Nissan Maxima.  *Id.*, ¶ 27.  But even if the Court did find Derek Price credible, his testimony still would not be enough because Derek Price himself expressed uncertainty whether he operated at the direction of Armond Long or his brother, Thomas, who also had some role in some type of fraudulent scheme.  *Id.*, ¶ 27; *e.g.*, ECF 266, 145:14-15 :5-13 ("Q. Who came up with something about insurance? A. I'm not sure if it was Val [Armond Long] or Roni [Thomas Long].").

Relatedly, the government cannot meet its burden based on *Pinkerton* liability.  Under that legal theory, a co-conspirator may be held accountable for the acts of other conspirators in furtherance of the conspiracy.  *United States v. Whitted*, 734 F. App'x 90, 93 (3d Cir. 2018) (quoting *United States v. Lopez*, 271 F.3d 472, 480 (3d Cir. 2001)).[7]  *Pinkerton* liability stops short because, for the reasons explained above,

---

[7] "A defendant is liable for substantive offenses committed by co-conspirators under a *Pinkerton* theory if (1) the defendant is a party to a criminal conspiracy, (2) one or more co-conspirators committed the substantive offense in furtherance of the conspiracy, and (3) commission of the substantive offense was reasonably

there is insufficient evidence to prove beyond a reasonable doubt that Armond Long was a party to any conspiracy to defraud the insurance companies. Specifically, there is insufficient credible evidence to connect Armond Long to the main participants in this case.[8]

In the end, the government failed to prove beyond a reasonable doubt that Armond Long was part of a scheme to defraud the insurance companies, through crashing the stolen vehicles, setting them on fire, or submitting false claims for loss. And there is insufficient evidence to link him to any co-conspirators under *Pinkerton*. For these reasons, the Court finds Armond Long not guilty on all Counts.

## CONCLUSION

The Court finds Defendant Lashaumba Randolph **GUILTY** as to Counts 1, 4, 5, and 6, and **NOT GUILTY** as to Counts 2 and 3, and finds Defendant Armond Long **NOT GUILTY** as to all Counts. An appropriate verdict order follows.

DATE: February 28, 2023                 BY THE COURT:

                                        */s/ J. Nicholas Ranjan*
                                        United States District Judge

---

foreseeable." *Whitted*, 734 F. App'x at 93 (citing *United States v. Ramos*, 147 F.3d 281, 286 (3d Cir. 1998)).

[8] A guilty verdict based on accomplice liability would likewise fail for the same reason—there is insufficient evidence showing Armond Long knew that the main participants planned to commit the fraud against the insurance companies, or that Armond Long knowingly did some act to aid the main participants in committing the fraud. *See* Third Circuit Model Criminal Jury Instruction 7.02.